# DAIRYLAND INSURANCE COMPANY v. IMPLEMENT DEALERS INSURANCE COMPANY.

199 N. W. 2d 806.

July 28, 1972—No. 43431.

*Hanratty & Kline* and *Jerome E. Kline,* for appellant.

*Murnane, Murnane, Battis & Conlin* and *Robert T. White,* for respondent.

Heard before Knutson, C. J., and Todd, Kelly, and MacLaughlin, JJ.

MacLaughlin, Justice.

This is an appeal from a judgment of the district court holding that plaintiff, Dairyland Insurance Company, hereafter Dairyland, was not entitled to recover from defendant, Implement Dealers Insurance Company, hereafter Implement, under certain stipulated facts. We affirm the trial court.

On February 14, 1969, one Michael Lee Fahey was involved in an automobile accident while driving a car loaned to him and owned by Clarence and Alfred Fischer, doing business as Fischer Olds, a partnership. Fahey had taken his car to Fischer Olds to be repaired, and the accident-involved automobile had been provided for his temporary use during the repair period. At the time of the accident Fahey's automobile was insured by Dairyland, and the Fischer Olds automobile was covered by a general garage liability policy issued by Implement.

The limits of the Dairyland policy were $10,000 per person and $20,000 per accident for personal injury and $5,000 for property damage arising out of one accident, and the policy limits for Implement were $50,000 per person and $100,000 per accident for personal injury and $5,000 for property damage arising out of one accident.

As a consequence of the accident of February 1969, Fahey and Fischer Olds were sued by injured third parties. The claims of the third parties were settled by the respective insurance carriers, but the question of coverage was reserved and an action for declaratory judgment was commenced by Dairyland against Implement requesting, in effect, that Implement be required to pay the settlement amount. The trial court found in favor of Implement, and Dairyland has appealed to this court.

The Dairyland policy issued to Fahey included the following applicable provisions:

"Insuring Agreements

"In consideration of the premium and in reliance upon the statements in the declarations made a part hereof and subject

to all of the terms of this policy, the company agrees with the insured named in the declarations as follows:

"I Coverages A and B—Bodily Injury and Property Damage Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * * caused by accident and arising out of the ownership, maintenance or use of the automobile * * *.

\* \* \* \* \*

"IV Automobile Defined * * *:

"(a) Automobile. Except where stated to the contrary, the word 'Automobile' means:

\* \* \* \* \*

"(3) Temporary Substitute Automobile—an automobile not owned by the named Insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction * * *."

The Dairyland policy goes on to say in Condition 9:

"* * * [P]rovided however, the insurance with respect to a temporary substitute automobile * * * shall be excess insurance over any valid and collectible insurance against such loss."

This type of provision is known in the insurance industry as an excess clause.

The Implement policy issued to Fischer Olds had the following applicable provisions:

"I. GARAGE LIABILITY

"COVERAGE G—BODILY INJURY LIABILITY

"COVERAGE H—PROPERTY DAMAGE LIABILITY

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

G. bodily injury or

H. property damage

to which this insurance applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded as indicated in the schedule * * *.

\* \* \* \* \*

"IV. PERSONS INSURED

"Each of the following is an insured under this insurance to the extent set forth below:

"Under the Garage Bodily Injury and Property Damage Liability Coverages:

\* \* \* \* \*

"(3) with respect to the automobile hazard:

"(a) any person while using, with the permission of the named insured, any automobile to which the insurance applies under the automobile hazard, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *.

\* \* \* \* \*

"VII. ADDITIONAL DEFINITIONS

"When used in reference to this insurance (including endorsements forming a part of the policy):

\* \* \* \* \*

'automobile hazard' means that one of the following hazards for which insurance is afforded as indicated in the schedule:

"Automobile Hazard 1.

"(1) The ownership, maintenance or use (including loading and unloading) of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and (3) the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person."

The Implement policy also contained an endorsement reading in part as follows:

"LIMITED COVERAGE FOR CERTAIN INSUREDS

"This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the .following:

"GARAGE INSURANCE

\* \* \* \* \*

"In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions:

"1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.

"2. If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the amount of the applicable financial responsibility limit, then this insurance shall apply to the excess of damages up to such limit.

"3. If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit.

"4. As used in this endorsement:

" 'applicable financial responsibility limit' refers to the applicable limit of the financial responsibility law of the state where the automobile is principally garaged.

" 'garage customer' means any person other than (1) an employee, director, stockholder, partner or member of the named

insured or a resident of the same household as the named insured, such employee, director, stockholder, partner or member * * *."

The provision found in the endorsement is known in the insurance industry as a nonliability or an escape clause.

The issue before us is whether the escape clause in the Implement policy on the accident-involved automobile denies coverage to Fahey, which in turn renders Fahey's insurer, Dairyland, solely liable to the third parties under the facts of this case. We hold that it does.

Both parties refer to our decision in Federal Ins. Co. v. Prestemon, 278 Minn. 218, 153 N. W. 2d 429 (1967). There, also, an automobile owned by a garage and loaned to a customer was involved, and the customer's insurance policy contained an excess clause and the garage's policy contained an escape clause. In the Prestemon case, we set forth certain criteria for determining the respective responsibility of insurers, including the following (278 Minn. 229, 153 N. W. 2d 436):

"* * * (1) Which company by its policy intended to cover 'business operations'? (2) Which company specifically described the accident-involved vehicle in its policy? (3) Which premium is reflective of the greater contemplated exposure? (4) Which company insured the particular risk as an 'incident' of its object, and which policy appears to cover the particular car and the risks inherent in using the car for contemplated 'business operations' uses?"

We also stated as a general rule that where one policy contains an excess clause and the other contains an escape clause, liability will be imposed on the latter.

There are important differences between the policy on the accident-involved automobile in the Prestemon case and the policy on the accident-involved automobile in this case. The policy on the accident-involved automobile in the Prestemon case contained the following pertinent provisions (278 Minn. 222, 153 N. W. 2d 432):

"A. Hazards Defined:

"Garage Operations Hazard: The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations'; including * * *

\* \* \* \* \*

"(b) the ownership, maintenance or use of any automobile owned by the named insured in connection with garage operations while furnished for the use of (i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use."

The definition of insured in Prestemon was as follows (278 Minn. 222, 153 N. W. 2d 432):

"B. Definition of Insured:

"Persons insured: Each of the following is an insured with respect to the Garage Operations Hazard, except as provided below:

\* \* \* \* \*

"(3) with respect to the Automobile Hazard:

\* \* \* \* \*

"(b) any person while using an automobile to which the insurance applies under Paragraph (b) of the Automobile Hazard with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission."

The garage operations provisions defining "persons insured" were amended by an endorsement which provided:

"1. Paragraph 3 of 'Persons Insured' is amended to read as follows, and Paragraphs 4 and 5 below are added, all subject to exceptions (i), (ii), (iii) and (iv) as set forth in the policy.

" '(3)   With respect to an automobile to which the insurance applies under Paragraph 1(a) of the Automobile Hazards, any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission:

\*     \*     \*     \*     \*

" '(b)   any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person; \* \* \*

" '(4)   With respect to an automobile to which the insurance applies under Paragraph 1(b) of the automobile hazards, any person while using such automobile with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission \* \* \*.' "

It was asserted in the Prestemon case that these provisions meant that the customer driver of the accident-involved car was not insured at all by the garage policy. This court, in discussing who was included within the definition of the words "any other person" in the "Hazards" section of the policy, said (278 Minn. 224, 153 N. W. 2d 433):

"\* \* \* Just who this 'other person' may be whom the underwriter had in mind is not indicated. If not a customer, it would not have been a waste of words to say so."

We went on to say (278 Minn. 227, 153 N. W. 2d 435):

"\* \* \* If the underwriters intended that the policy not include the use of loaners to customers, they could have easily said so."

The Prestemon case was decided in October 1967. Possibly in response to our invitation in Prestemon to define more carefully who was included as an insured under the garage policy, the endorsement quoted above was included in the Implement policy. The trial court in his memorandum stated in part as follows:

"* * * An important question is whether Fahey is an insured under the Implement policy. The facts in this case are similar to those in *Federal Insurance Co. v. Prestemon* [citation omitted]. * * * The Court [in Prestemon] indicated that if the underwriters did not have a customer in mind it would not have been a waste of words to say so and further added that if the underwriters intended that the policy did not include the use of loaners to customers, they could easily have said so. The garage policy (Implement) in this case contains the specific exclusion which was absent in *Prestemon* in the endorsement which clearly states that 'in consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard'. * * *

"In addition to the specific exclusion of garage customers * * * the endorsement at paragraph numbered 1 provides that where there is other valid and collectible insurance, whether primary, excess or contingent and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy. It has been noted that the Dairyland policy provides insurance up to the financial responsibility limit. The result follows that here Fahey was not an insured under the Implement policy."

We agree with the trial court. We have many times held that where there is no ambiguity in an insurance policy, there is no room for construction. Contracts of insurance must be construed according to the terms the parties have used, and the language used must be given its ordinary and usual meaning so as to give

effect to the intention of the parties as it appears from the contract. Bobich v. Oja, 258 Minn. 287, 104 N. W. 2d 19 (1960); Simon v. Milwaukee Auto. Mutual Ins. Co. 262 Minn. 378, 115 N. W. 2d 40 (1962); Lang v. General Ins. Co. 268 Minn. 36, 127 N. W. 2d 541 (1964).

Endorsements attached to an insurance contract are part of the contract, and the endorsements and the policy must be construed together. They should be construed, if possible, so as to give effect to all provisions, but where provisions in the body of the policy conflict with an endorsement, the provision of the endorsement governs. Wyatt v. Wyatt, 239 Minn. 434, 58 N. W. 2d 873 (1953); Bobich v. Oja, *supra*.

The language used in the endorsement to the Implement policy is clear and unambiguous. Under the provisions of the endorsement, garage customers were not insureds if there was "other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit." Inasmuch as there was such other insurance in the Dairyland policy, and notwithstanding the presence of the excess clause, Fahey was not insured under the Implement policy.

We feel constrained to say that the patience of this court in struggling with the war of semantics among insurance companies is not inexhaustible. However, under the stipulated facts of this case, and in view of the Prestemon case, we affirm the trial court.

Affirmed.