WESTERN NATIONAL MUTUAL IN-
SURANCE COMPANY, Respondent,

v.

UNITED STATES FIRE INSURANCE
COMPANY, Appellant,

Pamela J. Kost, et al., Defendants.

No. 47752.

Supreme Court of Minnesota.

July 14, 1978.

Meagher, Geer, Markham, Anderson, Ad-
amson, Flaskamp & Brennan, Minneapolis,
for appellant.

Gislason & Martin, Edina, for respondent.

Heard before KELLY, SCOTT and
WAHL, JJ., and considered and decided by
the court en banc.

SCOTT, Justice.

This is an appeal by United States Fire
Insurance Company (U. S. Fire)[1] from an
order denying its post-trial motion and

1. There were additional named defendants, but the issue on appeal is limited to the coverage
issue.

from the judgment entered in a declaratory judgment action brought by Western National Mutual Insurance Company (Western) to determine the obligations of each insurer under two automobile liability insurance policies. We reverse.

On November 9, 1974, John Zukauska was operating a motor vehicle which struck Louise Milbert. The vehicle was owned by Pamela J. Kost, and Zukauska was driving it with Kost's permission. Milbert sustained personal injuries for which she made claims against Kost and Zukauska.

Kost was the named insured under a policy of automobile liability insurance issued by Western which provided in part that coverage extended to—

" * * * any other person using such automobile with the permission of the named insured, * * * *but only if no other valid and collectible automobile liability insurance, either primary or excess, * * * is available to such person * * *.*" (Italics supplied.)

This type of provision is known as an "escape" or nonliability clause.

Zukauska, on the other hand, was insured under his father's automobile liability insurance policy issued by U. S. Fire, which provided:

" * * * [I]nsurance with respect to a temporary substitute automobile or non-owned automobile *shall be excess insurance over any other valid and collectible insurance.*" (Italics supplied.)

This type of provision is known as an "excess" clause.

Western sought a declaratory judgment that its policy did not provide coverage for Zukauska and that Zukauska was insured under the U. S. Fire policy. Western acknowledged coverage for Kost from the outset and settled the claim of Milbert, the injured claimant. Thus, Milbert no longer has an interest in the outcome of this litigation.

At trial, Western's underwriting department head, Robert Anderson, testified that Western issues two similar policies of automobile insurance—a Blue Crown policy and a family automobile policy. The Blue Crown policy was issued to Kost and carried the lowest premium rate of any policy available through Western. According to Anderson, the difference in rates between the Blue Crown policy and the family policy was attributable to two or three specific provisions—one of which is the "escape" clause involved in this litigation.

The district court held that Western did not have an obligation to defend or indemnify Zukauska since Western's policy, because of its "escape" clause, "does not apply to Zukauska if other valid and collectible automobile liability insurance, either primary or excess, is available to John Zukauska," and that U. S. Fire had the obligation to defend and indemnify Zukauska since he "is an additional insured under said policy and since there is no other valid and collectible insurance available to him."

The sole issue on appeal is whether the Western insurance policy containing the "escape" clause or the U. S. Fire policy containing the "excess" clause provides the primary coverage.

In determining that the U. S. Fire policy provided the coverage, the district court relied upon *Dairyland Ins. Co. v. Implement Dealers Ins. Co.,* 294 Minn. 236, 199 N.W.2d 806 (1972). U. S. Fire asserts that this was error and that the controlling case is *Federal Ins. Co. v. Prestemon,* 278 Minn. 218, 153 N.W.2d 429 (1967).

*Prestemon* concerned the construction of "escape" and "excess" clauses contained in separate insurance policies. The case involved a situation where Judkins collided with an automobile owned by Prestemon while Judkins was driving an automobile loaned to him by a garage. The liability policy of the garage contained an "escape" clause, whereas the policy covering Judkins' own automobile contained an "excess" clause.

The court in *Prestemon* noted that under the general rule liability is to be imposed on the insurer who issued the policy containing the "escape" or "no liability" clause whenever it conflicts with an "excess" clause.

This court went on to endorse the suggestion of Judge Albert Tate, Jr., in his concurring opinion in *State Farm Mutual Auto. Ins. Co. v. Travelers Ins. Co.,* 184 So.2d 750, 753 (La.App.1966), that—

"\* \* \* [t]he better approach \* \* \* is to allocate respective policy coverages *in the light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy.*" 278 Minn. 231, 153 N.W.2d 437. (Italics supplied.)

Applying this test to the facts in *Prestemon,* this court held that the insurer of the accident-involved automobile was the primary insurer and the "escape" clause contained in its policy would be " 'legally ineffective to exculpate it from the liability primarily insured by it.' " 278 Minn. 232, 153 N.W.2d 438. This court also concluded that the insurer of Judkins' car did not provide the primary coverage because "the operation of the loaned car was 'ancillary' to the primary coverage of the operation of the customer's automobile." 278 Minn. 232, 153 N.W.2d 438.

In the present case, the district court rejected *Prestemon* and applied *Dairyland Ins. Co. v. Implement Dealers Ins. Co., supra,* a more recent case which distinguished *Prestemon. Dairyland* similarly involved a dispute as to whether the policy containing an "excess" clause or the policy containing an "escape" clause provided the primary coverage. In *Dairyland,* Fahey was involved in an automobile accident while driving an automobile loaned to him by a garage. Fahey's own automobile was insured by Dairyland and contained the "excess" clause whereas the garage's automobile policy contained an "escape" or "no liability" clause. The "escape" clause, however, was prefaced by the statement that " '[i]n consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions: \* \*.' " 294 Minn. 240, 199 N.W.2d 808.

In *Dairyland,* this court agreed with the trial court's distinction between the facts of *Dairyland* and *Prestemon.* The trial court had stated:

" ' \* \* \* The Court [in *Prestemon* ] indicated that if \* \* \* the underwriters intended that the policy did not include the use of loaners to customers, they could easily have said so. The garage policy \* \* \* in this case contains the specific exclusion which was absent in *Prestemon* in the endorsement which clearly states that "in consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard." \* \* \*

" 'In addition to the specific exclusion of garage customers \* \* \* the endorsement \* \* \* provides that where there is other valid and collectible insurance, whether primary, excess or contingent \* \* \* no damages are collectible under this policy. \* \* \* ' " 294 Minn. 244, 199 N.W.2d 811.

This court in *Dairyland* went on to hold that where there is no ambiguity in the terms of an insurance policy there is no room for construction and "the language used must be given its ordinary and usual meaning so as to give effect to the intention of the parties as it appears from the contract." 294 Minn. 244, 199 N.W.2d 811. Applying these rules, this court concluded:

"The language used in the endorsement to the [garage's] policy is clear and unambiguous. Under the provisions of the endorsement, garage customers were not insureds if there was 'other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit.' *Inasmuch as there was such other insurance in the Dairyland policy, and notwithstanding the presence of the excess clause, Fahey was not insured under the [garage's] policy.* (Italics supplied.)

"We feel constrained to say that the patience of this court in struggling with the war of semantics among insurance companies is not inexhaustible. * * *" 294 Minn. 245, 199 N.W.2d 811.

It appears that our patience is still being tested to the point where we are forced to draw fine lines in "struggling with the war of semantics among insurance companies." 294 Minn. 245, 199 N.W.2d 811.

We predicated coverage in *Prestemon* on the premise that if the underwriters had intended to exclude "loaners" they could easily have said so. In *Dairyland* they said so very clearly by a specific and unambiguous endorsement. In this case we have no such endorsement.

We therefore hold as we did in *Prestemon* that by the weight of authority the "excess" clause contained in the U. S. Fire policy prevails over the "escape" clause contained in the Western policy.

Reversed.

OTIS, J., took no part in the consideration or decision of this case.