**NATIONAL INDEMNITY COMPANY OF MINNESOTA, Respondent,**

v.

**Terry Allan NESS, et al., Respondents,**

**Buckley Brothers Trucking, Inc., Defendant,**

**State Farm Mutual Automobile Insurance Company, Sandra Jean Johnson, et al., Respondents,**

**and**

**General Casualty Insurance Company, intervenor, Appellant.**

**No. C6–90–313.**

Court of Appeals of Minnesota.

July 3, 1990.

Review Denied Sept. 14, 1990.

Jerome E. Kline, Schermer, Schwappach, Borkon, Ramstead & Mariani, Ltd., Minneapolis, for National Indem. Co. of Minnesota.

William E. Macklin, Nord & Macklin, Lakeville, for Terry Allan Ness, et al.

Michael B. Padden, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Buckley Bros. Trucking, Inc.

Emilio R. Giuliani, Lee L. LaBore & Associates, Hopkins, for State Farm Mut. Auto. Ins. Co.

Michael T. Peck, Minneapolis, for Sandra Jean Johnson, et al.

W. Scott Herzog, Dale M. Wagner, Moss & Barnett, Minneapolis, for General Cas. Ins. Co., intervenor.

Considered and decided by HUSPENI, P.J., and PARKER and NORTON, JJ.

## OPINION

HUSPENI, Judge.

Respondent National Indemnity Company of Minnesota commenced this declaratory judgment action in June of 1988. Appellant General Casualty Indemnity Company of Minnesota was allowed to intervene. Following a trial to the court, a declaratory judgment was entered determining that General Casualty provides coverage to respondent Terry Allan Ness and that National Indemnity does not. General Casualty has appealed. We affirm.

## FACTS

Buckley Brothers Trucking, Inc. is a corporation engaged in hauling aggregate. Terry Ness was a good friend of the son of William Buckley, one of the principal shareholders of the corporation. Ness began working for Buckley Brothers in 1983. Initially, Ness drove a truck owned by Buckley Brothers and was paid 25 percent of the gross revenue generated by Ness' driving.

In April of 1984, Ness purchased a 1977 International tractor, but continued to use Buckley trailers because he could not afford his own. When Ness was using his own tractor, he was paid 75 percent of gross revenues, rather than the 25 percent he had been paid before.

Ness performed routine maintenance on the tractor and paid for the costs of its operation and upkeep, including licensing. Buckley Brothers did not withhold social security or taxes from the money it paid to Ness. The parties characterized the arrangement as one in which Buckley found work and let Ness know about it.

Buckley Brothers told Ness he could not use its trailers unless Ness obtained "full coverage" on the tractor. Ness contacted Carl Mooney at the Krug Agency and told Mooney he had purchased a truck and needed full coverage insurance. Ness explained to Mooney the nature of the work he would be doing and asked Mooney the price for full coverage insurance. Ness later met with Mooney, gave Mooney a check and received an insurance binder dated April 1984.

National Indemnity issued a policy to Ness effective April 27, 1984 through April 27, 1985. Ness renewed the policy in 1985.

On December 14, 1985, Ness was driving his tractor and pulling a Buckley trailer. Ness had worked at a job site in Owatonna that day and was returning to the Buckley shop in Prior Lake. The trailer was empty. Ness failed to stop for a stop sign and struck a car being driven by Sandra Johnson. Sandra Johnson and her husband, Michael Johnson, brought suit against Ness and Buckley.

National Indemnity, which insured the tractor, denied coverage, relying on a "bobtail" provision in its policy. Driving a tractor with no trailer attached is called "bobtailing". Pulling an empty trailer, as Ness was doing, is called "deadheading". Bobtail coverage is effective only when no trailer is attached to the tractor.

National Indemnity commenced a declaratory judgment action to determine whether it was obligated to provide coverage to Ness for the December 14 accident. General Casualty, which insured the trailer, intervened in the declaratory judgment action. The matter came on for a court trial in November of 1989. Following a trial, the court concluded that National Indemnity does not provide coverage for the December 14 accident; that Ness was an insured on the General Casualty policy covering the trailer; and that the Johnsons' damages resulted from the use of the trailer. General Casualty has appealed from the judgment.

## ISSUES

1. Did the trial court err in finding no coverage for Ness under the National Indemnity policy?

2. Did the trial court err in determining that Sandra Johnson's injuries resulted from the use of the Buckley trailer?

## ANALYSIS

### I.

General Casualty contends the trial court erred in failing to apply the doctrine of reasonable expectations and the rule that ambiguities in an insurance policy are to be construed against the drafter of the policy.

#### A. *Reasonable Expectations*

■ The doctrine of reasonable expectations was recognized by the Minnesota Supreme Court in *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn.1985). Under the doctrine,

The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

*Id.* at 277 (quoting Keeton, *Insurance Law Rights At Variance With Policy Provisions*, 83 Harvard L.Rev. 961, 967 (1970)). The Minnesota Supreme Court has gone on to say

The doctrine does not remove from the insured the responsibility to read the policy but at the same time does not hold the insured to an unreasonable level of understanding of the policy. Other factors to be considered are the presence of ambiguity, language which operates as a hidden exclusion, oral communications from the insurer explaining important but obscure conditions or exclusions, and whether the provisions in a contract are known by the public generally. In short, the doctrine asks whether the insured's expectation of coverage is reasonable given all the facts and circumstances.

*Hubred v. Control Data Corp.*, 442 N.W.2d 308, 311 (Minn.1989) (citations omitted). The doctrine is a recognition that there is an inequality in bargaining power between the insurer and the insured, that a typical lay person is not able to read and understand insurance policies and that people purchase insurance in reliance on others to provide a policy that meets their needs. *Atwater Creamery*, 366 N.W.2d at 277.

The doctrine of reasonable expectations has generally been limited to those cases in which the policy, while purporting to provide a specific coverage, so limited the coverage as to amount to a hidden exclusion. *See Park v. Government Employees Insurance Co.*, 396 N.W.2d 900, 903 (Minn. App.1986), *pet. for rev. denied* (Minn. Feb. 13, 1987); *Merseth v. State Farm Fire and Casualty Co.*, 390 N.W.2d 16, 18 (Minn. App.1986), *pet. for rev. denied* (Minn. Aug. 13, 1986). In *Atwater*, for example, the insured obtained burglary coverage. After a burglary occurred, the company denied coverage, relying on a policy provision which required "visible marks of physical damage to the exterior at the point of

entrance or to the interior at the point of exit." *Atwater*, 366 N.W.2d at 274. In requiring coverage, the *Atwater* court noted that "no one purchasing something called burglary insurance would expect coverage to exclude skilled burglaries that leave no visible marks of forcible entry or exit". *Id.* at 276.

In contrast to the policy in *Atwater*, the policy in the present case contains no hidden exclusions. Instead, the following bobtail endorsement # M–2870 was issued with both the original policy of April 27, 1984 and the renewal policy one year later:

> This insurance does not apply while a power unit (tractor) is used for the towing or transporting of any trailer or semi-trailer or while in the process of having a trailer or semi-trailer attached to or detached from it, unless such trailer or semi-trailer is owned by you and specifically described above.

In addition, the declaration page of the policy indicated both that endorsement # M–2870 was "contained in this policy at its inception" and that "THESE DECLARATIONS TOGETHER WITH THE BUSINESS AUTO POLICY PROVISIONS AND ENDORSEMENTS IF ANY ISSUED TO FORM A PART THEREOF COMPLETE THE ABOVE NUMBERED POLICY."

■ We agree with the trial court's conclusion that "the * * * policy issued to Ness contained a valid limitation of coverage, limiting liability under that policy to 'bobtailing' only." [1] Although Ness argues that he did not receive the coverage he thought he was receiving, he admits he did not read the policy. We note the observation of the supreme court in *Hubred* that the doctrine of reasonable expectation "asks whether the insured's expectation of coverage is reasonable given all the facts and circumstances," *id.* at 311, and conclude that application of that doctrine in this case would inappropriately extend it to matters beyond the scope intended in *Atwater*. *See also Ross v. City of Minneapolis*, 408 N.W.2d 910 (Minn.App.1987), pet. for rev. denied (Minn. Sept. 23, 1987).

**B. *Ambiguities***

■ The policy issued to Ness by National Indemnity provides that coverage is afforded Ness' tractor and that liability coverage is provided for "any trailers you [Ness] don't own while attached to [Ness' tractor]." An endorsement attached to the policy, however, provided that there is no coverage on the tractor when a trailer is attached to the tractor. General Casualty contends that this creates an ambiguity and therefore the National Indemnity policy should be held applicable to the accident which occurred here. We cannot agree.

The endorsement attached to the National Indemnity policy states,

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. This endorsement changes the policy on the inception date of the policy or as of the date shown below. * * * LIABILITY INSURANCE, personal injury protection (or other no-fault coverage) and uninsured motorist's coverage, for a covered auto described in this endorsement is changed as follows: * * *

This endorsement was part of the insurance contract when it was originally issued.

■ "Insurance policies are similar to other contracts; they are matters of agreement by the parties and the function of a court is to determine what the agreement was and enforce it." *Fillmore v. Iowa National Mutual Insurance Co.*, 344 N.W.2d 875, 877 (Minn.App.1984). The policy "must be construed according to the terms the parties have used, and the language used must be given its ordinary and usual meaning so as to give effect to the intention of the parties as it appears from the contract." *Dairyland Insurance Co. v. Implement Dealers Insurance Co.*, 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972). In construing an insurance contract, the policy must be considered as a whole. *Henning Nelson Construction Co. v. Fireman's Fund American Life Insurance Co.*, 383 N.W.2d 645, 652 (Minn.1986).

---

**1.** Only the liability coverage limitation is at issue in this matter. We need not and do not

address the first-person coverages (PIP and uninsured motorist).

■ Endorsements attached to an insurance contract are part of the contract and the endorsements and policy must be construed together. *Bobich v. Oja*, 258 Minn. 287, 295, 104 N.W.2d 19, 24–25 (1960). Although the policy itself states that Ness is covered when he is driving his tractor and pulling a trailer he does not own, the endorsement at issue states in three places that it *changes the policy to exclude coverage* in such a situation. Reading the policy and the endorsement together, the contract as a whole is unambiguous.

## II.

■ General Casualty contends the trial court erred in determining that Sandra Johnson's injuries resulted from the use of Buckley's trailer, and urges that the phrase "resulting from" used in its policy indicates a causal connection similar to proximate cause. General Casualty then goes on to argue that neither the trailer nor the fact that it was attached to a tractor contributed causally to the injuries sustained by the Johnsons. We cannot agree.

General Casualty's proposed construction of the term "resulting from" would render liability insurance on trailers virtually superfluous. It is difficult to imagine a situation in which a trailer, by itself, causes an accident.

General Casualty argues, in the alternative, that this court should equate the term "resulting from" with the test for whether an injury "arose out of" the use of a motor vehicle. Before it can be said that an injury arose out of the use of a motor vehicle, the motor vehicle itself must have been an active accessory to the injury. *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598, 603 (Minn.1977). In addition,

The mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy.

*Associated Independent Dealers v. Mutual Service Insurance*, 304 Minn. 179, 181, 229 N.W.2d 516, 518 (1975). "There must be some connection between the injury and the use of the vehicle for transportation purposes." *Tlougan v. Auto Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn. 1981).

Using this standard, General Casualty argues that the accident was caused by Ness' failure to see a stop sign and would have occurred whether the trailer had been attached to the tractor or left in Owatonna. Therefore, argues General Casualty, the trailer had no causal connection to the accident. We must also reject this argument. Under the facts of this case, any attempt to separate damages caused by the tractor from those caused by the trailer would be futile. The trailer was dependent on a tractor for movement. The two must be viewed as a unit. *See Christian v. Royal Ins. Co.*, 185 Minn. 180, 240 N.W. 365 (1932).

Finally, a trial court's findings of fact may not be set aside unless they are clearly erroneous. Minn.R.Civ.P. 52.01. The trial court's finding that the accident resulted from the use of the trailer is not clearly erroneous and is affirmed.

## DECISION

Affirmed.

PARKER, Judge (dissenting).

I concur with the majority as to part II of the opinion, but I respectfully dissent as to part I and would apply the doctrine of reasonable expectations. I believe an issue would still exist for determination by the finder of fact as to the reasonableness of those expectations.

It is now five years since the supreme court held in *Atwater Creamery* that the doctrine might be applied in Minnesota. The trial courts, and this court, seem loath to do so. *Ross v. City of Minneapolis*, 408 N.W.2d 910, 914 (Minn.App.1987), *pet. for rev. denied* (Minn. Sept. 23, 1987). *But see Grinnell Mutual Reinsurance Co. v. Wasmuth*, 432 N.W.2d 495, 499 (Minn.App. 1988), *pet. for rev. denied* (Minn. Feb. 10, 1989) (describing the "narrowly recognized doctrine" and the "unusual case requiring application of *Atwater*").

This case seems to present a fact situation appropriate to the doctrine; it seems quite similar to *Atwater Creamery* itself and in some respects seems more persuasive:

1. The application informed the company that Ness was 23 years old and that this was to be the "First policy on his own." Thus, the company was aware he was an unsophisticated insured.

2. He told the insurance agent he needed "full coverage;" the written binder given him by the agent contained no reference to a restrictive endorsement and appeared to assure what Ness was required by Buckley Trucking Co. to obtain. Such plain language in a binder has been held to be an ambiguity when contradicted by an endorsement (found by a jury not to have been delivered). *Schmidt v. St. Paul Fire & Marine Insurance Co.*, 376 N.W.2d 237, 241 (Minn.App.1985).

3. The company then issued him a policy with almost illusory coverage. On the declarations page it listed the liability, P.I.P. and uninsured coverages mandated in Minnesota as applicable (by reference to described autos) when his tractor *was* attached to an unowned trailer. In an attached endorsement, the coverage was limited to those occasions when Ness drove his tractor unattached to any trailer. Ness testified that this occurred *only twice* in the time he owned the trailer (about 20 months until the accident).

4. The trial court found that the insurance agency mailed a letter to Ness explaining, in part, the "bobtail" coverage; it found that he denied ever receiving it. The trial court did not resolve this apparent contradiction, but found he had received and not read the policy.

5. The premium charged ($355) seems inconsistent with the drastically limiting endorsement. Buckley Trucking paid $470 for the same coverage on tractors, with an additional $35 for coverage on trailers. Thus, the premium charged would not seem to have put him on notice.

I would submit that the inconsistency between his application for insurance, the binder given him and the coverages listed on the policy declarations page on the one hand, and the endorsement attached to the policy on the other hand, created an ambiguity. I would also submit that the policy issued failed to provide coverages adequate to meet the mandates of the Minnesota No-Fault Act for an applicant who wanted "complete coverage."

The doctrine of reasonable expectations should have been applied and the finder of fact should now be required to decide whether Ness did, in fact, receive the explanatory letter and whether his expectations were reasonable. If found to have been received, the adequacy of the letter as notice may present a further issue. I would reverse and remand for trial on this issue alone.