**WINTHROP AND WEINSTINE, P.A., Plaintiff,**

v.

**TRAVELERS CASUALTY AND SURETY COMPANY, and United States Fidelity and Guaranty Company, Defendants.**

**Civil No. 4–96–656 (DSD/JMM).**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 17, 1998.

---

6. *See supra* note 4.

Joseph Stuart Friedberg, Friedberg Law Office, Minneapolis, MN and Leland Somes Watson, Watson Law Office, Minneapolis, MN, for Winthrop and Weinstine, P.A..

Thomas J. Vollbrecht, Norman Roblee Carpenter, Faegre & Benson, Minneapolis, MN, for United States Fidelity & Guar. Co.

Charles Henry Becker, Meagher & Geer, Minneapolis, MN, for Travelers Cas. and Sur. Co.

## ORDER

DOTY, District Judge.

This matter is before the court on the motions of defendants for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants, motions.

## BACKGROUND

The plaintiff Winthrop and Weinstine, P.A. ("Winthrop and Weinstine") is a Minnesota professional association engaged in the general practice of law. The defendants Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company ("Travelers"),[1] and United States Fidelity and Guaranty Company ("USF & G"), provided insurance coverage to plaintiff for employee dishonesty. Plaintiff commenced an action in Minnesota state court, claiming that defendants breached their respective contracts of insurance. Pursuant to 28 U.S.C. §§ 1441 and 1446, defendants removed the action to this court based upon diversity jurisdiction.

The parties filed a stipulation of undisputed facts for purposes of this action. From February 1, 1990 through January 31, 1994, Winthrop and Weinstine was continuously insured under employee dishonesty coverage issued by USF & G. The USF & G policy provided employee dishonesty insurance pursuant to the "Crime General Provisions" under the policy. The USF & G policy stated general conditions including the condition that:

> Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

Stipulation of Undisputed Facts, Exh. 1 at 294. The "Policy Period" is shown in the "DECLARATIONS" of the policy. *Id.* The declarations showed three policy periods for the USF & G policies which were from February 1, 1990 to February 1, 1991 ("Policy Period I"); from February 1, 1991 to February 1, 1992 ("Policy Period III"); and from February 1, 1992 to February 1, 1994 ("Policy Period III") The third policy period lasted for two years because a one-year policy was extended for a second year by an endorsement changing the policy.

A general condition of the USF & G policy included a "Discovery Period for Loss" which stated that USF & G would "pay only for covered loss discovered no later than one year from the end of the policy period." The policy described the insured's "Duties in the Event of Loss":

> After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:
>
> a. Notify us as soon as possible.
>
> b. Submit to examination under oath at our request and give us a signed statement of your answers.
>
> c. Give us a detailed, sworn proof of loss within 120 days.
>
> d. Cooperate with us in the investigation and settlement of any claim.

*Id.* at 293. The policy further stated that the insured may not bring any legal action against USF & G involving loss unless Winthrop and Weinstine "complied with all the terms" of the insurance. *Id.* at 294.

On February 1, 1994, the USF & G policy terminated and, in its place, Winthrop and Weinstine obtained a substantially identical policy issued by Aetna. The Aetna policy remains in effect. The Aetna policy also provides the condition that:

> Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

*Id.*, Exh. 2 at 8. The "Loss Sustained During Prior Insurance" condition states:

> a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:
>
> (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and
>
> (2) The loss would have been covered by this insurance had it been in effect

---

1. Effective July 1, 1997, defendant Aetna Casualty and Surety Company became known as Travelers Casualty and Surety Company. Pursuant to Rule 25(c) of the Federal Rules of Civil Procedure, Aetna Casualty and Surety Company moved the court to substitute Travelers Casualty and Surety Company as the party in interest for defendant. By order dated January 14, 1998, the court ordered the Clerk of Court to make the substitution in the caption of this case.

when the acts or events causing the loss were committed or occurred.

*Id.*

Beginning in July 1989, Winthrop and Weinstine employed Therese Warner ("Warner") as an accounts payable clerk. On July 5, 1994, Winthrop and Weinstine terminated Warner's employment. On September 28, 1994, Winthrop and Weinstine discovered evidence that during June 1994, the last month of her employment, Warner stole money from Winthrop and Weinstine by altering the "payee" on Winthrop and Weinstine's checks. This was the initial discovery by Winthrop and Weinstine of any thefts by Warner. Winthrop and Weinstine immediately notified its insurance agent, Mark Epstein ("Epstein") that it had discovered evidence of Warner's thefts occurring during June 1994. On September 28, 1994, Epstein provided notice to Aetna of a potential claim by Winthrop and Weinstine under the Aetna policy. At that time, neither Winthrop and Weinstine nor Epstein notified USF & G of any potential claim.

On November 23, 1994, Winthrop and Weinstine submitted a Proof of Loss (the "First Proof of Loss") to Aetna on a proof of loss form previously provided by Aetna. The First Proof of Loss documented that between September 1993 and June 1994, Warner altered the payee on twenty-three of Winthrop and Weinstine's checks. The total amount taken was $47,830.54. Six of the checks included in the First Proof of Loss, totaling $12,042.70, were altered and stolen by Warner when Winthrop and Weinstine was insured under the USF & G policy. Winthrop and Weinstine did not submit the First Proof of Loss either to USF & G or to Epstein. At that time, Winthrop and Weinstine did not provide any notice to USF & G of a possible claim.

In December 1994, Aetna presented a check in the amount of $47,330.51 to Winthrop and Weinstine in "Full Settlement" of the First Proof of Loss. The total was the entire amount of the claim, less a $500 deductible as required by the Aetna policy. Aetna did not dispute any of the items of loss claimed by Winthrop and Weinstine in the First Proof of Loss. Winthrop and Weinstine accepted the check from Aetna and executed a "Release and Assignment" dated December 20, 1994. The "Release and Assignment" stated that for the consideration of $47,330.54, Winthrop and Weinstine "release[d] and forever discharge[d] [Aetna Casualty and Surety Company] on account of a certain loss arising out of EMPLOYEE THEFT BY THERESE WARNER." *Id.*, Exh. 3. The "Release and Assignment" further provided:

IN FURTHER CONSIDERATION of the aforesaid payment, the undersigned does hereby transfer, assign and set over to [Aetna] all of its claims and rights against THERESE WARNER and against all persons, firms or corporations whomsoever growing out of the aforementioned said loss and does hereby agree to execute any and all further papers, releases and/or assignments that may be necessary to effectuate the purposes of this assignment.

*Id.* Winthrop and Weinstine did not provide notice to USF & G or Epstein of its settlement with Aetna or of its assignment of rights to Aetna. Aetna obtained a promissory note from Warner in the principal sum of $47,830.54, with interest at 9 percent per annum, plus full costs of collection. The promissory note provided that Warner would make monthly payments to Aetna, beginning on January 30, 1995, in the amount of $200.00.

On January 3, 1995, Winthrop and Weinstine learned that additional Winthrop and Weinstine checks, not included in the First Proof of Loss, had been altered and stolen by Warner during the course of her employment. On January 4, 1995, Winthrop and Weinstine provided notice to Aetna of the additional altered and stolen checks. Winthrop and Weinstine did not provide notice to USF & G or Epstein. As of February 1, 1995, when the one-year discovery window contained in the USF & G policy expired, Winthrop and Weinstine had provided no notice to USF & G of any claim arising out of Warner's activities. On April 5, 1995, Winthrop and Weinstine submitted a Proof of Loss (the "Second Proof of Loss") to Aetna. The Second Proof of Loss documented that, between July 31, 1993 and May 23, 1994, Warner had altered the payee on an additional thirty-three checks, in the amount of $82,994.88. In July 1995, Aetna approved for

payment all items of loss claimed by Winthrop and Weinstine in the Second Proof of Loss. Nineteen of the thirty-three checks, totaling $52,651.57, were altered and stolen by Warner when Winthrop and Weinstine was insured under the USF & G policy. Winthrop and Weinstine did not submit the Second Proof of Loss to USF & G or Epstein.

In June 1995, plaintiff received information that Warner had altered and stolen additional checks beyond those already claimed in the First and Second Proofs of Loss, and that the additional alterations and thefts had occurred over a period of at least three years. Winthrop and Weinstine provided notice to Aetna of another claim under the Aetna policy for the additional checks. Plaintiff did not provide notice to USF & G. Plaintiff hired an accounting firm to determine the full extent of its loss. In September 1995, the accounting firm completed its investigation and documented an additional 153 altered and stolen checks dating from as early as 1990, totaling $215,783.01.

On October 18, 1995, Winthrop and Weinstine provided notice to USF & G of a potential claim arising out of Warner's conduct. On November 13, 1995, Winthrop and Weinstine submitted a Proof of Loss (the "Third Proof of Loss") to both USF & G and Aetna. Plaintiff did not provide notice to any bank or financial institution which had accepted or made payment on the checks listed in the three proofs of loss, that the checks had been altered and that the funds payable were stolen by Warner.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material if its resolution affects the outcome of the case. There is a genuine of issue of fact if the evidence is such that it could be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Judgment is granted

for the moving party if, under the governing law, there can be but one reasonable conclusion as to a jury's verdict. *Id.*

On a motion for summary judgment, all evidence and inferences are viewed in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Nevertheless, the nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted for the defendant because a failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23. With this standard at hand, the court addresses defendants' motions for summary judgment.

■■■ It is well established under Minnesota law that the interpretation and construction of an insurance contract is a question of law. *See Watson v. United Services Automobile Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997); *Meister v. Western Nat. Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992). As recently stated by the Minnesota Supreme Court in *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn.1997):

In interpreting insurance contracts, we must ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract. *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn.1990) (citing *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972)). "If the terms of an insurance policy are not specifically defined, they must be given their plain, ordinary, or popular meaning." *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 132 (Minn.1984) (citing *Dairyland Ins.*, 294 Minn. at 244, 199 N.W.2d at 811). Ambiguous terms in an insurance contract are to be resolved against the insurer and in accordance with the reasonable expectations of the insured. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn.1979) (citations omitted). Ambiguity exists if the language of the policy is reasonably subject to more

than one interpretation. *Id.* at 34. "However, a court has no right to read an ambiguity into the plain language of a policy in order to provide coverage." *Farkas v. Hartford Accident & Indem. Co.,* 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969) (citations omitted).

The insurance policy must be considered as a whole, according to the language used by the parties in their agreement. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.,* 383 N.W.2d 645, 652 (Minn.1986).

Based on the policies and respective policy periods, plaintiff asserts that Travelers is responsible to provide coverage for the losses incurred during Policy Periods I, II and IV. Plaintiff argues that USF & G is responsible for coverage for losses incurred during Policy Period III. In the alternative, plaintiff claims that Travelers is equitably estopped from denying coverage for losses incurred during Policy Period III.

### A. USF & G's Motion for Summary Judgment

■ USF & G moves for summary judgment, asserting that Winthrop and Weinstine's claim against USF & G is barred as a matter of law because Winthrop and Weinstine did not discover and provide notice of its loss to USF & G as required by the USF & G policy. USF & G asserts that its policy is a "claims made" policy, as opposed to an "occurrence" policy, and as such, USF & G is not required under Minnesota law to show that it was prejudiced by the delay. Even if this court determines that the USF & G policy does not bar USF & G from liability absent a showing of prejudice from late notice, USF & G asserts that it has established the requisite prejudice as a matter of law. Winthrop and Weinstine argues that the policy is an "occurrence" policy, as opposed to a "claims made" policy, so USF & G is required to show that it was prejudiced by the delay. In addition, Winthrop and Weinstine argues that, at the very least, a genuine issue of material fact exists as to prejudice.

■ USF & G relies on a distinction made in the law between a "claims made" policy and an "occurrence" policy. A claims-made policy, also referred to as a "discovery" policy, is a policy under which coverage is provided if the insured conduct is "discover-

ed and brought to the insurer's attention during the term of the policy." *Esmailzadeh v. Johnson and Speakman,* 869 F.2d 422, 424 (8th Cir.1989) (applying Minnesota law and citing 7A J. Appleman, Insurance Law and Practice § 4504.01, at 312–13) Under a claims-made policy, it does not matter when the act occurred. *See Zuckerman v. National Union Fire Ins. Co.,* 100 N.J. 304, 495 A.2d 395, 398 (1985). An occurrence policy is a policy which provides coverage if the insured conduct "occurred within the term of the policy, even if the term has since expired." *Esmailzadeh,* 869 F.2d at 424. In other words:

> [I]n an "occurrence" policy, the peril insured is the occurrence itself, so that once the occurrence takes place, coverage attaches even though the claim is not made for sometime thereafter. In a "claims made" policy it is the making of the claim which is the event and peril insured, regardless of when the occurrence took place.

*Molyneaux v. Molyneaux,* 230 N.J.Super. 169, 553 A.2d 49, 52 (N.J.Super.Ct.App.Div.1989).

■ Because the notice requirement in a claims-made policy defines the scope of coverage, "a delay in notice beyond the policy period would alter a basic term of the insurance contract." *Esmailzadeh,* 869 F.2d at 424. Claims-made policies "place special reliance on notice" which "is just as important to coverage as the requirement that the claim be asserted during the policy period." *Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.,* 993 F.2d 155, 158 (8th Cir.1993). Thus, if an insured fails to give notice within the policy period of a claims-made policy, the insured is barred from recovery. *See St. Paul Fire and Marine,* 993 F.2d at 158 (recognizing that if the insured does not give notice within the contractually required time period that there is "simply no coverage under the policy"). "Notice in a 'claims made' policy provides the insurer with the knowledge that after a certain date the insurer is no longer liable under the policy, and accordingly allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater cer-

tainty." 993 F.2d at 158. The issue of prejudice or absence of prejudice to the insurer is not relevant to the determination of coverage under a claims-made policy. *See Esmailzadeh,* 869 F.2d at 424.

There are recognized advantages and disadvantages to both the insured and insurer depending upon the type of policy:

As to the "claims made" policy, the obvious benefit to the underwriter is that there is no open-ended "tail" after the expiration date of the policy....

In contrast, the "occurrence" policy has a "tail" that extends beyond the policy period. The "tail" is the lapse of time between the date of the incident giving rise to liability and the time when a claim is made. This results in less certainty in computing premiums. For example, insurers writing "occurrence" professional liability policies must compute premiums at current rates even though claims may become highly inflated long after the premiums cease to be paid. So the premiums the insurer receives may end up being inadequate against future claims that may be inflated.

"Claims made" policies, however, also have disadvantages for the insurer. For example, such policies cover acts performed before the effective date of the policy. "Occurrence" policies in contrast, provide coverage only for acts occurring during the policy period....

From an insured's standpoint, the "claims made" policy offers two special advantages: coverage for acts prior to the effective date of the policy and lower premiums. The "occurrence" policy provides no such coverage and, because of the uncertainty, costs more.

*See Hasbrouck v. St. Paul Fire and Marine Ins.,* 511 N.W.2d 364, (Iowa 1993) (citations omitted) (citing Note, The "Claims Made" Dilemma in Professional Liability Insurance, 22 U.C.L.A.L.Rev. 925 (1975)); *see also Zuckerman,* 495 A.2d at 399–401 (describing the advantages and disadvantages for the different policies).

In this case, USF & G argues that the policy limits coverage to losses which are discovered within a year of the expiration of the policy where notice is provided "as soon as possible" after discovery and where proof of loss is provided no later than 120 days after discovery. USF & G characterizes its policy as a claims-made policy. Winthrop and Weinstine disputes USF & G's analysis and argues that for an item to be covered under the policy, the act creating the loss must be committed during the policy period and the loss must be discovered either during the policy period or within one year thereafter. Winthrop and Weinstine characterizes the policy as an occurrence policy.

In reviewing the policies, the court recognizes that the policy is neither a traditional "claims-made" or "occurrence" policy. The USF & G policy requires that the insured conduct occur during the policy period, which is characteristic of an "occurrence" policy. However, discovery is also relevant under the policy because the loss must be discovered during the policy period or within one year after its expiration, which is characteristic of a "claims-made" policy. The formal categorization of the policy is not, however, the court's operative task. *See, e.g., Stine v. Continental Casualty Co.,* 419 Mich. 89, 349 N.W.2d 127, 136 (1984) (stating that a "hybrid" policy does not make the policy vague or indefinite). The critical issue is whether the policy requires notice to the insurer during the policy period or the one-year discovery period. The description of the risk covered by the insurer includes loss sustained through acts committed or events occurring within the policy period and such loss that is discovered within the year following the policy period. The provisions defining the parameters of the "covered loss" do not require notice to the insurer during the policy period or the following discovery period. The "notice" and "proof of loss" requirements are discussed under independent conditions of the policy. Reading the plain language of the policy as a whole, the court concludes that the USF & G policy is not a claims-made policy which exempts USF & G from having to show prejudice by plaintiff's delay.

Courts uphold notice provisions in insurance contracts because the policy behind the requirement is to give the insurer "an opportunity for prompt investigation so as to protect itself against fraudulent or exorbitant claims and, while the matter is fresh

in the minds of all, to appraise and determine a disposition by way of settlement or defense." *Sterling State Bank v. Virginia Surety Co.,* 285 Minn. 348, 173 N.W.2d 342, 346 (1969) Under Minnesota law, however, an insurer must show prejudice from the insured's delay in giving notice of a claim or proof of loss, unless the notice and proof of loss requirements are conditions precedent for liability. *Compare Sterling State Bank,* 173 N.W.2d at 346 (stating that a failure to furnish notice and proof of loss within the policy deadlines does not invalidate the policy except "where the giving of notice of loss or the furnishing of proof of loss is a condition precedent of liability under the insurance contract"), *and Bowlin v. Hekla Fire Ins. Co.,* 36 Minn. 433, 31 N.W. 859 (1887) (determining that compliance with a condition precedent was required absent a waiver by the insurance company), *with Reliance Ins. Co. v. St. Paul Ins. Co.,* 307 Minn. 338, 239 N.W.2d 922, 924–25 (1976) (recognizing public policy reasons for requiring showing of prejudice) *See Ryan v. ITT Life Ins. Corp.,* 450 N.W.2d 126, 130 (Minn.1990) (recognizing that the failure to give timely notice is not fatal to an insured's claim unless the insurer was prejudiced by the delay); *Terrell v. State Farm Ins. Co.,* 346 N.W.2d 149 (Minn.1984); *Mason v. St. Paul Fire & Marine Ins. Co.,* 82 Minn. 336, 85 N.W. 13, 14 (1901) stating that strict compliance is not essential for notice and proof of loss restrictions absent a specific provision to the contrary.

◼ In this case, the USF & G policy does not require forfeiture for late notice or delay. In addition, the "notice" and "proof of loss" conditions are not the essence of the contract, but rather provide an administrative procedure for notice to the insurer. The court concludes that the notice and proof of loss requirements are not conditions precedent for liability. Thus, USF & G must have been prejudiced by the late notice and submission of the proof of loss.

◼ Failure to give notice may prejudice the insurer as the lapse of time can deprive the insurer of the opportunity to promptly investigate the loss, and protect its rights of subrogation and other interests.

*See American Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923, 927 (Minn.1990) (recognizing prejudice to insurer absent notice of settlement); *Reliance,* 239 N.W.2d at 924–25; *Farrell v. Nebraska Indem. Co.,* 183 Minn. 65, 235 N.W. 612 (1931) (requiring a showing of actual prejudice by the insurer to defeat liability); *see also Schoffman v. Blue Cross and Blue Shield of Minnesota,* 557 N.W.2d 625, 627–28 (Minn.Ct.App.1997). "The dispositive factor is not how much time elapses … it is what happens during that time." *Hooper v. Zurich American Ins. Co.,* 552 N.W.2d 31, 36 (Minn.Ct.App.1996) (citing cases requiring actual prejudice).

◼ After Winthrop and Weinstine discovered Warner's scheme and until the date that it notified USF & G of a possible claim, it signed a release and assigned all of its rights and claims against Warner to another insurance company. In addition, plaintiff foreclosed any right of recovery against the financial institutions that paid on the altered checks by failing to provide the financial institution notice of the altered checks. *See* Minn.Stat. § 336.4–406(f) (providing a one-year statute of limitations). Plaintiff does not deny that USF & G suffered prejudice by its failure to notify the financial institution, but characterizes the amount lost as a deduction, by way of an affirmative defense, rather than as a preclusion to recovery. Under Minnesota law, however, actual prejudice to the insured operates as a bar to recovery when the insured breached a condition of the insurance policy. USF & G has established actual prejudice as a matter of law. Summary judgment is appropriate in favor of USF & G.

**B. Travelers' Motion for Summary Judgment**

◼ Travelers moves for summary judgment, asserting that it has no obligation to provide employee dishonesty coverage under its policy for loss discovered during Travelers' policy period, but sustained during the policy period of Winthrop and Weinstine's prior insurance policy with USF & G. Travelers does not dispute its obligation to cover the loss sustained during Policy Period IV, in the amount of $74,267.90.[2] Travelers in-

---

2. Plaintiff asserts that the amount of loss incurred during Policy Period IV was $82,009.06.

In the court's determination, plaintiff's calcula-

formed plaintiff that it had previously paid $47,330.51 on the claim, of which $12,042.70 was for loss sustained prior to February 1, 1994. Travelers credited the amount sustained prior to February 1, 1994, in addition to a $500 deductible, leaving an outstanding balance of $26,437.39 of covered loss, which Travelers agrees to pay.

In addition to loss incurred during Policy Period IV, plaintiff argues that Travelers is responsible for coverage of loss incurred during Policy Periods I and II because the respective discovery periods expired on February 1, 1992 and February 1, 1993. Plaintiff did not discover Warner's scheme until September 1993, which was after the expiration of the discovery periods. Plaintiff relies on the "Loss Sustained During Prior Insurance" condition to allocate responsibility to Travelers. Travelers asserts that plaintiff's reliance on paragraph 8 of the "General Conditions" is misplaced because that provision only attaches risk if the loss was sustained during the period of any prior insurance in which plaintiff could have recovered under the insurance except that the time for discovery had expired *and* if the Travelers' insurance became effective at the time of cancellation or termination of the prior insurance. In this case, Travelers' insurance policy did not go into effect until after the third policy period. The court agrees with Travelers that summary judgment is appropriate because the condition for "Loss Sustained During Prior Insurance" has not been satisfied with respect to the loss sustained during Policy Periods I and II.

■ Because USF & G was prejudiced by Winthrop and Weinstine's delay, the court responds to plaintiff's argument that Travelers is estopped from denying coverage for losses sustained during Policy Period III because Travelers accepted and paid the First Proof of Loss which it submitted on November 23, 1994, notwithstanding the fact that six of the altered checks were items of loss sustained under USF & G's preceding policy. If Travelers would have appropriately denied

the claim, plaintiff arguably would have notified USF & G in time to avoid prejudice.

■ Under Minnesota law, the doctrine of estoppel cannot operate to enlarge the coverage of an insurance policy. *See Shannon v. Great American Ins. Co.,* 276 N.W.2d 77, 78 (Minn.1979). An insured cannot benefit from coverage "for a risk not specifically undertaken and for which no consideration has been paid." *Minnesota Mutual Fire and Casualty Co. v. Rudzinski,* 347 N.W.2d 848, 851 (Minn.Ct.App.1984). Because Winthrop and Weinstine is not entitled to coverage under its policy with Travelers for the losses sustained during Policy Period III, the doctrine of estoppel cannot expand coverage where none exists.

■ There are circumstances, however, in which an insurer has paid an insured by mistake, but restitution or reimbursement for the amount is denied. *See, e.g., Rudzinski,* 347 N.W.2d at 851 (citing *Equitable Life Assurance Society of U.S. v. Bachrach,* 265 Minn. 83, 120 N.W.2d 327, 333 (1963)). A right of restitution is extinguished if circumstances have so changed after benefits have been received that it would be inequitable to require full restitution. *Rudzinski,* 347 N.W.2d at 851. In this case, Travelers accepted and paid the First Proof of Loss even though it was not obligated to do so. Because Travelers paid the claim, there was no reason for plaintiff to give notice or submit a proof of loss to USF & G. At this point, the court determines that it would be inequitable to reduce the amount owing to plaintiff by the amount which Travelers erroneously paid on the First Proof of Loss. Thus, summary judgment is warranted in favor of Travelers, but equity does not permit reimbursement for the amount wrongly paid by Travelers.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that defendants' motions for summary judgment are granted (Doc. Nos.

tion includes three checks which were dated prior to February 1, 1994, but which did not clear until after February 1, 1994. The Travelers' policy covers losses sustained through acts committed or events occurring during the policy

period. In this case, the employee's dishonest acts were committed prior to February 1, 1994. The court concludes that the losses incurred because of check numbers 18886, 18923, and 18924 are not covered by Travelers' policy.

21 and 24) Travelers is liable to plaintiff for $38,480.09 ($74,267.90 − $47,330.51 − $500).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**