CONWED CORPORATION, a Delaware
corporation, Plaintiff,

v.

EMPLOYERS REINSURANCE CORPO-
RATION, a Missouri corporation and Al-
exander & Alexander, Inc., a Maryland
corporation, Defendants.

Civ. No. 4–91–728.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 13, 1993.

Richard S. Davis, Janice L. Duban and Rudnick & Wolfe, Chicago, IL, and Robert D. Brownson, Louise A. Behrendt and Stich, Angell, Kreidler & Muth, P.A., Minneapolis, MN, for plaintiff.

David B. Orfield, Stephen J. Rondestvedt and Meagher & Geer, Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant Employers Reinsurance Corporation's ("Employers") motion for summary judgment. Based on a review of the file, record and proceedings herein, the court grants Employers' motion for summary judgment.

## BACKGROUND

The facts underlying this matter are not in dispute. Plaintiff Conwed Corporation ("Conwed") manufactured ceiling tiles in its plant located in Cloquet, Minnesota. Between 1959 and July 1974, Conwed used asbestos fibers in the production of those tiles. In August 1985, Conwed closed its Cloquet plant and discharged its employees. Some of Conwed's former employees thereafter filed workers' compensation claims against it. Those former employees alleged that they were afflicted with an occupational disease arising from the ingestion of asbestos fibers while employed at Conwed.

Conwed settled the workers' compensation claims brought against it. Conwed now seeks indemnification from Employers for the amounts it paid in excess of $50,000 in settling some of those claims. Conwed contends that Employers must cover the excess liability it incurred in settling those claims pursuant to a reinsurance policy ("policy") it purchased from Employers.[1] The policy

---

1. Conwed purchased Employers' Agreement No. C-27655, a "Specific Excess Workmen's Compensation Reinsurance Agreement." The policy set forth a per occurrence indemnity limit of $5,000,000, subject to a per occurrence retention as follows:

| Effective Date | Self-Insured Retention |
| --- | --- |
| 11/1/73–11/1/74 | $ 50,000 |
| 11/1/74–11/1/75 | $ 50,000 |
| 11/1/75–11/1/76 | $100,000 |
| 11/1/76–5/27/77 | $150,000 |

took effect on November 1, 1973. It was terminated on May 26, 1977. The policy thus was in effect when Conwed stopped using asbestos as a component in its ceiling tiles. The policy, however, was not in effect when the occupationally diseased former employees ("underlying claimants") filed their claims against Conwed.[2]

Employers contends that it need not indemnify Conwed because none of the claims for which Conwed seeks indemnity satisfies the prerequisite conditions for such payments under the policy. Specifically, Employers contends that it need not indemnify Conwed for the claims at issue because none of the underlying claimants ceased work at Conwed as a result of their alleged occupational diseases. In addition, Employers notes that none of the underlying claimants ceased work during the period that the policy was in effect. Employers thus moves for summary judgment on Conwed's claim.

## DISCUSSION

 Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider Employers' motion for summary judgment.

 This case involves policy interpretation. The court must interpret the policy's provisions in a plain and ordinary fashion so as to effectuate the intent of the parties. *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977); *Sage Co. v. The Ins. Co. of N. Am.*, 480 N.W.2d 695, 697 (Minn.Ct.App.1992). Although the court must construe ambiguities in an insurance policy in favor of the insured, *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989), there is no room for judicial construction where the poli-

---

2. The following is at least a partial list of the underlying claimants and the dates on which they filed their occupational disease disability claims:

1. Stanley Fleisch: August 13, 1986;
2. Russell Lagrow: August 13, 1986;
3. Clarence Maki: December 14, 1988;
4. James Manisto: July 7, 1987;
5. William Nendick: August 13, 1986;
6. Lawrence Roseth: February 17, 1989.

In its moving papers, Employers only lists the six employees named above. In its complaint, however, Conwed lists two other employees whose settlement awards exceeded $50,000. Although the court does not know the exact number of employees that received in excess of $50,000 in the settlement of their claims with Conwed, there is not dispute that no employee filed an occupational disease disability claim during the period the policy was in effect.

**1358**

cy language is clear and unambiguous. *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn.1986); *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 294 Minn. 236, 199 N.W.2d 806, 811 (1972). The court must construe the policy as a whole, *Hubred*, 442 N.W.2d at 310–11; *Henning*, 383 N.W.2d at 652, and determine the meaning of the policy according to what a reasonable person in the position of the insured would understand its words to mean. *Canadian Universal*, 258 N.W.2d at 572. The court may not use rules of construction to redraft the policy and create coverage where unambiguous policy language plainly excludes such coverage. *Sanchez v. Western Casualty & Surety Co.*, 404 N.W.2d 407, 409 (Minn.Ct.App.1987) (citation omitted).

The provisions of the policy at issue in this matter are straightforward. Section I of the policy provides, in part, that it:

> [A]pplies to loss sustained by . . . [Conwed] because of liability imposed upon . . . [Conwed] by:
>
> > (a) the workmen's compensation .act of each state named in Item 3 of the Schedule, or
> >
> > (b) law for damages,
>
> on account of . . . occupational diseases sustained, by employees employed by . . . [Conwed] . . ., as a result of occurrences taking place at or after the effective date . . . [of the policy].

Rondestvedt Aff., Exh. A. Section XIV, the cancellation provision, provides, in part, that:

> This agreement does not apply to loss as a result of occurrences taking place after the . . . cancellation [of the policy].

*Id.* Section IV, the definitions provision, provides that, an occurrence "shall be deemed to take place on the date upon which the employee ceases work as a result of such occupational disease." *Id.*

■ Employers contends that the policy is unambiguous and under the provisions cited above no occurrence occurred during the period the policy was in effect. Employers thus contends that it need not indemnify Conwed and that summary judgment is appropriate.

■ The court agrees. The court finds that the terms of the policy are unambiguous

and it "has no right to read an ambiguity into the plain language of an insurance contract in order to construe it against the insurer." *Henning*, 383 N.W.2d at 652. Application of the provisions cited above demonstrates that Conwed's claim for indemnification fails. The policy took effect on November 1, 1973. Employers terminated the policy on May 27, 1977. None of the underlying claimants ceased working between November 1, 1973, and May 27, 1977. Thus, by the specific terms of the policy, no occurrence occurred with respect to the underlying claimants. *See Id.* ("[T]he occurrence shall be deemed to take place on the date upon which employee ceases work as a result of such occupational disease.").

Conwed contends that the policy provisions cited above, when construed together, are ambiguous, and therefore, summary judgment is not appropriate. Specifically, Conwed contends that the cancellation provision is in conflict with Section I of the policy because Minn.Stat. § 176.66, subd. 10 compels Employers to indemnify it for the excess liability it incurred in settling the underlying claimants' claims. Minn.Stat. § 176.66, subd. 10 provides, in part, that:

> In the event that the employer who is liable for the compensation had multiple insurers during the employee's term of employment, the insurer who was on the risk during the employee's last significant exposure to the hazard of the occupational disease is the liable party.

In this case, the underlying claimants were last exposed to asbestos fibers during the period the policy was in effect.

Conwed's argument is not persuasive. No language in Minn.Stat. § 176.66, subd. 10 compels Employers to provide coverage for liabilities that it did not contract to cover. Rather, Minn.Stat. § 176.66, subd. 10 is designed to help identify the employer or insurer, in a situation involving multiple employers or insurers, that may be liable for an occupationally diseased employee's disability compensation. Although Employers was Conwed's excess liability insurer during the underlying claimants' last significant exposure to asbestos fibers, it was not "on the risk" during that exposure because under the terms of the policy, it was only on risk if an occurrence occurred during the period the

policy was in effect. The court already has determined that no occurrence occurred during that period. The court thus concludes that Conwed's argument based on Minn.Stat. § 176.66, subd. 10 fails.

Conwed also argues that summary judgment is inappropriate because it "reasonably expected that the ... [policy] afforded coverage to Conwed for all losses, in excess of Conwed's applicable retention per occurrence, stemming from occupational disease claims in which employment at Conwed during the Employers policy period was alleged to be a contributing factor." Conwed Memorandum in Opposition at 11. Conwed's argument is based on the reasonable expectations doctrine ("doctrine"), a judicially created principle that attempts to equalize bargaining power between insurance companies and unsophisticated insurance purchasers. The Minnesota Supreme Court first applied the doctrine in *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271 (Minn.1985). In *Atwater*, the Minnesota Supreme Court found that in certain situations, the reasonable expectations of an insured regarding the scope of an insurance policy's coverage will be given effect notwithstanding actual policy language contrary to the insured's expectations. The court stated that in certain situations:

> The result of the lack of insurance expertise on the part of insureds and the recognized marketing techniques of insurance companies is that '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.'

*Id.* at 277 (citations omitted). To invoke the doctrine, insureds must demonstrate that they have read the policy and that the terms of the policy are ambiguous or that the policy contains a hidden major exclusion. *Hubred*, 442 N.W.2d at 311 (citation omitted); *Levin v. Aetna Casualty and Surety Co.*, 465 N.W.2d 99, 102 (Minn.Ct.App.1991) (citations omitted); *Centennial Ins. Co. v. Zylberberg*, 422 N.W.2d 18, 23 (Minn.Ct.App.1988) (citations omitted). The doctrine, however, "does not hold the insured to an unreasonable level of understanding of the policy." *Hubred*, 442 N.W.2d at 311 (citation omitted). The broad question the court must answer is "whether the insured's expectation of coverage is reasonable given all the facts and circumstances" surrounding the purchase of the policy. *Id.*

The court finds that Conwed proffers no facts or circumstances that justify a reasonable expectation of coverage in this case. At the time it purchased the policy Conwed was an experienced purchaser of insurance, not an unsophisticated consumer. Further, the terms of the policy are not ambiguous. Application of the doctrine is not automatically warranted simply because Conwed may have misunderstood the terms of the policy. In addition, application of the doctrine is not automatically warranted because Employers may not have explained the terms of the policy to Conwed. *See e.g., Id.* at 311–12 ("The fact that the ... [insureds] were not orally informed of the exclusion does not, standing alone, free them of the responsibility of having read the exclusion at least as it appeared in the ... [policy]."). In light of the unambiguous policy, Conwed had no reasonable expectation of coverage unless an occurrence, as defined in the policy, occurred during the period the policy was in effect. No such occurrence occurred. Accordingly, the court concludes that Conwed's argument based on the reasonable expectation doctrine fails.

Based on the foregoing, the court concludes that Employers need not indemnify Conwed for the excess liability Conwed incurred in settling the underlying claimants' claims because no occurrence occurred during the period the policy was in effect. The court thus concludes that summary judgment is warranted. In addition, the court concludes that there is no just reason for delay of an entry of judgment on this matter. *See* Rule 54 of the Federal Rules of Civil Procedure. Accordingly, **IT IS HEREBY ORDERED** that Employers' motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**