CONWED CORPORATION, a Delaware corporation, Plaintiff,

v.

EMPLOYERS REINSURANCE CORPO-RATION, a Missouri corporation and Alexander & Alexander, Inc., a Maryland corporation, Defendants.

Civ. No. 4–91–728.

United States District Court,
D. Minnesota,
Fourth Division.

March 19, 1993.

Richard S. Davis, Janice L. Duban, and Rudnick & Wolfe, Chicago, IL, and Robert D. Brownson, Louise A. Behrendt, and Stich, Angell, Kreidler & Muth, P.A., Minneapolis, MN, for plaintiff.

David F. Fitzgerald, Randall H. Lentz, and Rider, Bennett, Egan & Arundel, Minneapolis, MN, for defendant Alexander & Alexander.

DOTY, District Judge.

This matter is before the court on defendant Alexander & Alexander's ("A & A") motion to dismiss or sever the claims against it. Based on a review of the file, record and proceedings herein, the court denies A & A's motion to dismiss and denies as moot its motion to sever claims.

## BACKGROUND

Plaintiff Conwed Corporation ("Conwed") manufactured ceiling tiles in a plant located in Cloquet, Minnesota. Between 1959 and July 1974, Conwed used asbestos fibers to produce the tiles. In August 1985, Conwed closed the Cloquet plant and discharged its employees. Thereafter, some former employees filed workers' compensation claims against Conwed, alleging that they were suffering from an occupational disease caused by the ingestion of asbestos fibers during

their employment with Conwed (the "underlying claimants").

Conwed settled various workers' compensation claims, and brought the present action seeking indemnity from defendant Employers Reinsurance Corporation ("Employers") pursuant to a workers' compensation reinsurance policy issued by Employers in late 1973. The policy took effect on November 1, 1973 and was terminated on May 26, 1977. The policy was thus in effect when Conwed stopped using asbestos as a component of its ceiling tiles. The policy, however, was not in effect when the underlying claimants filed their claims against Conwed.[1] Conwed sought indemnification for the amounts paid in excess of $50,000 in settling those claims.[2]

Employers subsequently brought a motion for summary judgment on Conwed's indemnification claims, contending that none of the settled claims satisfied the requirements of the reinsurance policy, specifically that none of the underlying claimants ceased to work at Conwed because of their alleged occupational diseases and none ceased to work during the period in which the policy was in effect. Employers argued that the reinsurance policy only provided coverage for losses stemming from a worker's cessation of employment during the term of the reinsurance policy.

In its order dated January 13, 1993, 816 F.Supp. 1355 the court granted Employers' motion for summary judgment, finding that the terms of the reinsurance policy were unambiguous and provided that an occurrence to which the policy applied:

shall be deemed to take place on the date upon which the employee ceases work as a result of such occupational disease.

*Conwed Corp. v. Employers Reinsurance Corp.*, 816 F.Supp. at 1358 (1993) (quoting reinsurance policy). Because none of the underlying claimants ceased working during the term of the policy as a result of an occupational disease, the court concluded that there had been no occurrence as defined by the terms of the policy. *Id.* at 1358.

The court also rejected Conwed's arguments based on the Minnesota Workers' Compensation Act, Minn.Stat. § 176.66, subd. 10, and the reasonable expectations doctrine. *See id.* at 1358–1359.

In September 1992, Conwed amended its complaint to add A & A as an additional defendant. A & A and its predecessor, Charles W. Sexton Company, acted as Conwed's exclusive insurance broker for its Minnesota operations from at least 1956 until 1985. From October 1960 to October 1979, A & A procured Conwed's workers' compensation reinsurance for its Minnesota operations, obtaining such coverage from the St. Paul Fire & Marine Insurance Company ("St. Paul") from October 1960 until October 1973. Conwed alleges that on A & A's recommendation, in 1973 it switched reinsurance coverage from St. Paul to Employers. The Employers policy was Conwed's sole Minnesota workers' compensation reinsurance policy from November 1, 1973, until May 26, 1977.

Conwed asserts three separate claims against A & A as a result of that change in

---

1. The following is a partial list of the underlying claimants and the dates on which they filed their occupational disease disability claims:

   | | | |
   |---|---|---|
   | 1. | Stanley Fleisch: | August 13, 1986; |
   | 2. | Russell Lagrow: | August 13, 1986; |
   | 3. | Clarence Maki: | December 14, 1988; |
   | 4. | James Manisto: | July 7, 1987; |
   | 5. | William Nendick: | August 13, 1986; |
   | 6. | Lawrence Roseth: | February 17, 1989. |

   Although it is unclear how many claims were settled for more than $50,000, it is undisputed that no employee filed an occupational disease disability claim during the period in which the reinsurance policy was in effect.

2. Conwed purchased Employers' Agreement No. C–27655, a "Specific Excess Workmen's Compensation Reinsurance Agreement." The policy set forth a per occurrence indemnity limit of $5,000,000, subject to a per occurrence retention as follows:

   | Effective Date | Self–Insured Retention |
   |---|---|
   | 11/1/73–11/1/74 | $ 50,000 |
   | 11/1/74–11/1/75 | $ 50,000 |
   | 11/1/75–11/1/76 | $100,000 |
   | 11/1/76–5/27/77 | $150,000 |

   Conwed thus contends that Employers must cover the excess liability incurred in settling the workers' compensation claims.

reinsurance policies: negligence, negligent misrepresentation and breach of fiduciary duty in procuring the reinsurance policy. A & A moves to dismiss all three claims, first arguing that the claims are premature because Conwed alleges only hypothetical damages. A & A further contends that Conwed failed to properly plead causation for purposes of all three claims. Finally, A & A argues that the negligent misrepresentation count fails to state a claim because the amended complaint does not assert misrepresentations or omissions with the level of particularity required under Federal Rule of Civil Procedure 9(b).

If A & A's motion to dismiss is denied, A & A moves the court to sever the claims asserted against it from those asserted against Employers.

## DISCUSSION

A & A moves to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Because it did not consider any materials outside the pleadings, the court analyzed A & A's motion as one to dismiss. *See* Federal Rule of Civil Procedure 12(c). On a motion to dismiss for failure to state a claim upon which relief may be granted, the court must construe the complaint in the light most favorable to the plaintiff and the complaint's allegations must be accepted as true. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1733, 12 L.Ed.2d 1030 (1964) (per curiam). Thus:

> The court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The parties also agree that the court should apply Minnesota substantive law to determine whether Conwed has adequately pled its claims against A & A. With those standards at hand, the court will consider A & A's motion to dismiss.

A & A first moves to dismiss Conwed's claims on the basis of prematurity, arguing that Conwed seeks only hypothetical damages. In each count asserted against A & A, Conwed alleges that it is entitled to damages only:

> [i]n the event that the court determines that Employers does not owe Conwed the coverage that Conwed seeks.

Amended Complaint ¶¶ 62, 75 & 78. Thus, A & A contends that Conwed cannot maintain its claims until the court determines the propriety of Employers' denial of coverage. As previously noted, however, in its order of January 13, 1993, the court concluded that Conwed's claim for indemnification against Employers failed. *Conwed Corp.,* at 1357–1359. Thus, even if the court were to accept A & A's contention, the damages that Conwed seeks are no longer hypothetical, and the court denies A & A's motion to dismiss to the extent it is premised on the alleged prematurity of Conwed's claims.

◼ A & A also moves to dismiss on the basis of Conwed's alleged failure to sufficiently plead causation as an element of the three claims.[3] A & A argues that a 1983 amendment to the Minnesota Workers' Compensation Act (the "1983 amendment") operates as a superseding cause, breaking any chain in causation between A & A's alleged conduct in 1973 and Conwed's alleged damages in 1993. That amendment, which addresses the liability of multiple employers or insurers, provides in part that:

> The employer liable for the compensation for a personal injury under this chapter is the employer in whose employment the

---

3. A plaintiff must allege four elements to state a claim for either negligence or breach of fiduciary duty: duty, breach of that duty, causation and damages. *See, e.g., Writers, Inc. v. West Bend Mutual Ins. Co.,* 465 N.W.2d 419, 423 (Minn.Ct. App.1991) ("[i]n a negligence action against an insurance agent, the plaintiff must demonstrate the existence of a duty, breach of the duty, causation and damages") (citing *Johnson v. Urie,* 405 N.W.2d 887, 891 (Minn.1987)); *Padco, Inc. v. Kinney & Lange,* 444 N.W.2d 889, 891 (Minn.Ct. App.1989) (under Minnesota law, elements to state a breach of fiduciary claim are the same as those for a negligence claim).

Minnesota law further provides that in order to establish a negligent misrepresentation claim, a plaintiff must prove pecuniary loss caused by justifiable reliance on the alleged misrepresentation. *See, e.g., Hurley v. TCF Banking & Savings, F.A.,* 414 N.W.2d 584, 586 (Minn.Ct.App.1987) (citations omitted).

**1363**

employee was last exposed in a significant way to the hazard of the occupational disease. In the event that the employer who is liable for the compensation had multiple insurers during the employee's term of employment, the insurer who was on the risk during the employee's last significant exposure to the hazard of the occupational disease is the liable party.

Minn.Stat. § 176.66, subd. 10 (1983). Under Minnesota law, a superseding cause:

1. Must come between the original cause and the injury in point of time.

2. Must not have been brought about by the original [conduct].

3. Must turn aside the natural sequence of events and produce a result which would not otherwise have followed from the original [conduct].

4. Must not have been reasonably foreseeable by the original wrongdoer.

4 *Minnesota Jury Instruction Guides*, JIG 142 (3d ed. 1986); *see Medved v. Doolittle*, 220 Minn. 352, 19 N.W.2d 788, 790–91 (1945) (discussing superseding cause). Examining those factors, the court concludes that the 1983 amendment does not constitute a superseding cause because it fails to fulfill the third element, that is, the amendment has not "turn[ed] aside the natural sequence of events", thereby producing a result "which would not otherwise have followed" from A & A's alleged conduct. Conwed's claims are founded on the allegation that when it switched its reinsurance from St. Paul to Employers, A & A improperly failed to advise Conwed that the Employers policy differed from the St. Paul policy, and that as a result of that variation, the Employers policy failed to cover workers' compensation claims that would have been covered under the St. Paul policy. That contention rests solely on the alleged difference in the wording of the two policies, and thus exists independently of any change in the law resulting from the 1983 amendment. The court further rejects A & A's claim that:

Prior to the 1983 amendment, there is little debate that the [Employers] policy, had it remained in effect, would have provided adequate coverage to Conwed for occupational disease claims of the type involved in this lawsuit.

(Def.'s Mem. in Supp. of Mot. to Dismiss at 9–10.) If the Employers policy defines occurrence more narrowly than the St. Paul policy, Conwed may not have had adequate coverage under either version of Minnesota law. Moreover, in its order of January 13, 1993, the court specifically rejected Conwed's claim that the 1983 amendment compelled "Employers to provide coverage for liabilities that it did not contract to cover." *Conwed Corp.*, at 1358. Thus, the court previously determined that the 1983 amendment does not, as a matter of law, work "to bring about a result which would not otherwise have followed." The court thus rejects A & A's contention that the 1983 amendment operates as a superseding cause, and denies A & A's motion to dismiss to the extent that it relies on Conwed's alleged failure to properly plead causation.

■ In Count III of the amended complaint, Conwed asserts a negligent misrepresentation claim against A & A. A & A moves to dismiss that claim, arguing that Conwed failed to allege any misrepresentations or omissions with sufficient specificity to meet the requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

In *Florenzano v. Olson*, the Minnesota Supreme Court noted that Minnesota has adopted the tort of negligent misrepresentation:

In *Bonhiver*, we adopted the Restatement (Second) of Torts definition of negligent misrepresentation:

'(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'

387 N.W.2d 168, 174 n. 3 (Minn.1986) (citing *Bonhiver v. Graff*, 311 Minn. 111, 248 N.W.2d 291, 298–99 (1976). Moreover, under Minne-

sota law, negligent misrepresentation concerning the type of coverage provided by a policy constitutes a specific ground for an insurance agent's liability. *See, e.g., Runia v. Marguth Agency, Inc.,* 437 N.W.2d 45, 48–49 (Minn.1989). In support of its claim, Conwed alleges that:

1. A & A is engaged in business as an insurance broker. (First Am.Compl. ¶¶ 37–39, 59.)

2. A & A was Conwed's business insurance broker during the times relevant to A & A's conduct alleged in the First Amended Complaint. (*Id.* ¶¶ 37–42, 59.)

3. During the course of their business relationship, A & A advised, consulted with and supplied information to Conwed concerning its insurance needs. (*Id.* ¶¶ 38, 39, 43, 45, 52 & 59.)

4. A & A made false representations and omissions concerning the coverage afforded by the Employers reinsurance policy. (*Id.* ¶¶ 46,. 56, 59 & 60.)

5. Conwed justifiably relied on A & A's misrepresentations and omissions when purchasing the Employers reinsurance policy. (*Id.* ¶¶ 53, 57 & 61.)

6. If coverage is lacking under the Employers reinsurance policy, Conwed sustained pecuniary loss as a result of its reliance on A & A's misrepresentations and omissions. (*Id.* ¶ 62.)

Based on the foregoing allegations, the court. concludes that Conwed has sufficiently pled a negligent misrepresentation claim under Minnesota law. The court thus rejects A & A's motion to dismiss on the basis of the alleged inadequacy of Conwed's pleading of a negligent misrepresentation claim.

A & A finally moves for severance of the claims against Employers and A & A, arguing that the claims are not properly joined. In its order of January 13, 1993, the court granted Employers' motion for summary judgment, and thus there are no longer any claims against Employers. The court therefore denies A & A's motion to sever as moot.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant Alexander & Alexander's motion to dismiss Counts III, IV and V of Conwed's amended complaint is denied; and

2. Defendant Alexander & Alexander's motion to sever the claims asserted against it is denied as moot.