Jill GAVLE, Appellant,

v.

LITTLE SIX, INC., a foreign corporation d/b/a Mystic Lake Casino, et al., Respondents.

No. C0–95–133.

Court of Appeals of Minnesota.

July 11, 1995.

Review Granted Sept. 28, 1995.

---

Ronald H. Usem, Craig D. Greenberg, Huffman, Usem, Saboe, Crawford & Greenberg, P.A., Minneapolis, for appellant.

Joseph Plumer, McDonough, Wagner & Sherry, P.A., Apple Valley, and Steven Olson, Bluedog, Olson & Small, P.L.L.P., Minneapolis, for respondents.

Considered by CRIPPEN, P.J., TOUSSAINT, C.J. and KALITOWSKI, J.

## OPINION

CRIPPEN, Judge.

Appellant Jill Gavle challenges the trial court's application of sovereign immunity to an Indian tribal business corporation alleged to have engaged in tortious conduct on and off the reservation. We affirm, finding no warrant for this court to refuse to apply sovereign immunity, and finding that the respondent tribal business corporation did not expressly waive its immunity.

## FACTS

Appellant alleges sexual harassment, pregnancy and race discrimination, civil rights violations, and various related torts arising from her employment with respondent Little Six, Inc., and the conduct of three Little Six officers. The alleged illegal acts occurred both on the Shakopee Mdewakanton Sioux Community reservation and at Little Six's corporate headquarters in Shakopee, off the reservation. Appellant is also suing the corporate officers individually, but these claims are not at issue on this appeal.

Appellant obtained employment with respondent Little Six, a business corporation formed by tribal ordinance of the Shakopee Mdewakanton Sioux Community. Little Six is registered as a foreign corporation in Minnesota. The corporation issued one share of stock when it was formed in 1991 and that share is owned by the Shakopee Mdewakanton Sioux Community as a whole. Each voting member of the community is entitled to one vote on corporate matters placed before the community for a vote.

Little Six's articles of incorporation, developed under authority of the community's business ordinances, provide that the purpose of the corporation is to "improve the business, financial or general welfare of the Corporation, Members of the Corporation,

and the Community." The articles provide that the corporation has the same sovereign immunity from suit as the community except for claims by the community or members of the corporation against the corporation. But the corporation reserves the "power to sue and * * * to consent to be sued" provided that a "contract or other commercial document * * * [specifies] the terms and conditions of such consent." And "consent to suit by the Corporation * * * [may not] be deemed a waiver of any of the rights, privileges and immunities of the Community."

The trial court granted summary judgment for Little Six on grounds that the corporation was immune from suit and, because Little Six had not consented to be sued, the trial court held that it had no subject matter or personal jurisdiction. The trial court held that registering with the secretary of state did not amount to a waiver of sovereign immunity.

## ISSUES

1. Does sovereign immunity apply to tribal business corporation activity on and off the reservation?

2. Has Little Six expressly waived its sovereign immunity?

## ANALYSIS

The trial court's summary judgment was granted as a matter of law on undisputed facts and is reviewed without deference to the trial court's determination. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

### 1. *Sovereign immunity*

■ The trial court had subject matter and personal jurisdiction over Little Six, a tribal business corporation, but sovereign immunity is a separate inquiry. *Duluth Lumber & Plywood Co. v. Delta Dev., Inc.*, 281 N.W.2d 377, 383 (Minn.1979).[1]

1. The trial court had personal jurisdiction over Little Six by virtue of its registration as a foreign corporation in Minnesota and appointment of an agent for service of process. Minn.Stat. § 303.13, subd. 1 (1992); *Rykoff–Sexton, Inc. v.*

■ Tribal sovereignty has been recognized in the law since 1832. *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832); *see Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165, 172–73, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977) (modern application). "There is no question that Indian tribes are generally immune from suit." *Duluth Lumber*, 281 N.W.2d at 383. Sovereign immunity, in part, protects the remnant of Indian resources from judgments that would deplete those assets. *See Cogo v. Central Council of Tlingit & Haida Indians*, 465 F.Supp. 1286, 1288 (D.Alaska 1979); *Atkinson v. Haldane*, 569 P.2d 151, 174 (Alaska 1977). But the scope of the immunity is not absolute, and Congress with its plenary powers has unlimited authority to waive or limit a tribe's sovereign immunity. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978).

Tribal sovereignty of the Shakopee Mdewakanton Sioux Community is further evidenced by its organization under the Indian Reorganization Act of 1934, 25 U.S.C.A. § 476 (Supp.1995) (hereinafter Section 16 tribal government corporation). The purpose of the Act is "to rehabilitate the Indian's economic life and to give [Indians] a chance to develop the initiative destroyed by a century of oppression and paternalism." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 152, 93 S.Ct. 1267, 1272, 36 L.Ed.2d 114 (1973) (citation omitted). The Indian Reorganization Act provides that a tribal government may incorporate under Section 16 to further economic interests and to be protected by sovereign immunity. *Parker Drilling Co. v. Metlakatla Indian Community*, 451 F.Supp. 1127, 1131 (D.Alaska 1978).

### 2. *Application of Sovereign Immunity to Tribal Corporation*

Courts have applied sovereign immunity to both tribal governments and their business activities. *Maryland Casualty Co. v. Citizens Nat'l Bank*, 361 F.2d 517, 521 (5th Cir.1966), *cert denied*, 385 U.S. 918, 87 S.Ct.

*American Appraisal Assoc., Inc.*, 469 N.W.2d 88, 90 (Minn.1991). It also had subject matter jurisdiction over the claims stated against Little Six. *Duluth Lumber*, 281 N.W.2d at 381.

227, 17 L.Ed.2d 143 (1966); *White Mountain Apache Indian Tribe v. Shelley,* 107 Ariz. 4, 7, 480 P.2d 654, 657 (1971); *Morgan v. Colorado River Indian Tribe,* 103 Ariz. 425, 428, 443 P.2d 421, 424 (1968); *North Sea Prods. Ltd. v. Clipper Seafoods Company,* 92 Wash.2d 236, 595 P.2d 938, 941–42 (1979). But this broad application of sovereign immunity must be examined in light of the Indian Reorganization Act, which separates tribal enterprises into tribal governmental and tribal business corporations.

Congressional intent to treat some tribal business corporations as entities distinct from the tribe itself is manifested in the Indian Reorganization Act, 25 U.S.C. § 477 (Supp.1990) (hereinafter Section 17 tribal business corporation). Section 17 is the counterpart to Section 16, which governs tribal government corporations. *Parker Drilling Co.,* 451 F.Supp. at 1131; *Atkinson,* 569 P.2d at 174–75. Section 17 provides for the formation of tribal business corporations which may further the economic interests of the community. *Atkinson,* 569 P.2d at 174. Congress enacted Section 17 out of concern that tribal government corporations would be at an economic disadvantage because banks and other businesses would be reluctant to engage in transactions with entities that enjoy sovereign immunity. *Parker Drilling Co.,* 451 F.Supp. at 1131; *Atkinson,* 569 P.2d at 172, 174; *see also,* William V. Vetter, *Doing Business with Indians and the Three "S'es",* 36 Ariz.L.Rev. 169, 175 (1994) (hereinafter Vetter).

The model articles of incorporation for Section 17 tribal business corporations contain a "sue and be sued" clause that constitutes a waiver of sovereign immunity and subjects the tribal business corporation, but not the tribe, to suit "consistent with the [Indian Reorganization Act's] purpose." Vetter, 36 Ariz.L.Rev. at 175. In this way tribal business corporation property is risked, leaving the tribal property safe from judgments. *Atkinson,* 569 P.2d at 175. But in its choice of language for Section 17, Congress does not require a "sue and be sued" clause or that all tribal businesses incorporate under its terms. Thus, although the Shakopee Mdewakanton Sioux Community incorporated under section 16 of the Indian Reorganization Act, Little Six was not incorporated under either Section 16 or 17, but under the tribe's business ordinances.

Against this history of the common law and the Indian Reorganization Act, application of sovereign immunity to tribal business corporations has begun to further erode because "tribal activities conducted outside the reservation present different considerations." *Mescalero Apache Tribe,* 411 U.S. at 148, 93 S.Ct. at 1270. "Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." *Id.* at 148–49, 93 S.Ct. at 1270 (citations omitted). Little Six cites no "express federal law" that protects its off-reservation activities.

In *Mescalero,* dealing with a tribe's off-reservation ski resort operation, the U.S. Supreme Court refused to apply sovereign immunity when the state asserted its regulatory power to tax the enterprise. *Id.* at 147–48, 93 S.Ct. at 1270. The U.S. Supreme Court recently restated this limited recognition of tribal sovereign immunity in another taxation case. In *Oklahoma Tax Comm'n v. Chickasaw Nation,* —— U.S. ——, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995), the Court held that "the Tribe gains no support from the rule that Indians and Indian tribes are generally immune from state taxation as this principle does not operate outside Indian country." *Id.* at ——, 115 S.Ct. at 2223 (citations omitted). Furthermore, in construing treaty language that is similar to Public Law 280, *infra,* by virtue of its application to persons and to tribal property, the Court held: "We comprehend this * * * language to provide for the Tribe's sovereignty within Indian country. We do not read the [language] as conferring super-sovereign authority to interfere with another jurisdiction's sovereign right[s]." *Id.* But the *Mescalero* and *Chickasaw Nation* opinions, while addressing the state's regulatory or taxing authority, provide no direction on the application of sovereign immunity to a tribal business corporation in the context of civil tort litigation in state courts.

In *Dixon v. Picopa Constr. Co.*, 160 Ariz. 251, 258–59, 772 P.2d 1104, 1111–12 (1989), the Arizona Supreme Court, the only state court so holding, found that a tribal corporation with no government functions, created by tribal laws as a separate entity, and with liabilities not borne by the tribe, could not assert the tribe's immunity for off-reservation torts. The *Dixon* court distinguished between treatment of corporations that are subordinate economic organizations of the tribal government, entitled to sovereign immunity, and those that are for-profit businesses lacking government control. *Id.* at 255–258, 772 P.2d at 1108–11. This distinction corresponds to congressional intent expressed in the Indian Reorganization Act.

■ Here, Little Six claims it is an arm of the tribal government, but this claim has no merit. Neither the form nor the substance of the Shakopee Mdewakanton Sioux Community business ordinances or Little Six's articles of incorporation support this conclusion. *See Mescalero*, 411 U.S. at 157 n. 13, 93 S.Ct. at 1275 n. 13 ("question of * * * immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business"). These documents show that Little Six was not created as a tribal government corporation under Section 16. It was created as a separate economic entity, not subject to governmental control, incorporated under tribal law and not merely as an authorized tribal activity. Little Six's board of directors is permitted to act outside the control of tribal officials, conduct business off the reservation, and its declared purpose does not include governmental activities. It has broad corporate powers and is organized as a for-profit entity. Tribal property is protected from judgments entered against the corporation. See *Dixon*, 160 Ariz. at 256–58, 772 P.2d at 1109–11 (factors that make tribal corporation separate and distinct organization from tribal government); Vetter, 36 Ariz.L.Rev. at 178. Applying the reasoning of the Arizona court in *Dixon*, Little Six is not entitled to assert sovereign immunity, because it is a separate economic activity, and not subordinate to the tribal government.

Another court has reached a similar conclusion on claims arising from acts that occurred off the reservation but where the alleged cause of action was for breach of contract. *Padilla v. Pueblo of Acoma*, 107 N.M. 174, 179, 754 P.2d 845, 850 (1988), *cert denied*, 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989) (unincorporated tribal business, registered to do business in the state). The *Padilla* court held that because there was no law limiting its jurisdiction and because New Mexico has a policy allowing suit against the state for breach of contract, comity required that the tribe should be similarly bound for off-reservation activity. *Id.* at 179–80, 754 P.2d at 850–51.

The Ninth Federal Circuit rejected the reasoning of *Padilla*, holding that congressional silence regarding off-reservation commercial activities is "compelling, if not controlling * * * [s]ince only Congress can limit the scope of tribal immunity and it has not done so." *In re Greene*, 980 F.2d 590, 594 (9th Cir.1992), *cert denied*, —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994). The court further criticized the *Padilla* court for its reliance on comity, urging that federal tribal immunity law leads to the conclusion that tribal sovereign immunity does not stop at the reservation boundaries. *Id.* at 594–95. But the *Greene* court discussed the sovereign immunity of an Indian tribe and its subordinate tribal economic activities, not an independent tribal business corporation such as exists here and existed in *Dixon*.

The Minnesota Supreme Court has held that an Indian organization incorporated under a tribe's business ordinances is a separate legal entity that could be sued on a breach of contract claim arising off the reservation. *Duluth Lumber*, 281 N.W.2d at 384. But in that case sovereign immunity had been waived by operation of a "sue and be sued clause" in the contract.

Appellant argues that because Minnesota is a "Public Law 280" state, this court has jurisdiction over civil causes of action to which Indians are parties, and "those civil laws of such State * * * that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have else-

where within the State." 28 U.S.C. § 1360 (1988).

Congress enacted Public Law 280 out of concern for lawlessness on some reservations, inadequate tribal law enforcement, and the state court's lack of jurisdiction over Indians. *Bryan v. Itasca County,* 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710 (1976). Public Law 280 waives sovereign immunity of Indians in that it gives Minnesota courts limited civil jurisdiction over actions "between Indians or to which Indians are parties" and "which arise in the areas of Indian Country." 28 U.S.C. § 1360(a).[2] Because Little Six is a separate legal and economic enterprise from the tribal government, appellant's argument has some merit. But P.L. 280 applies to Indians, not Indian tribes, *Bryan,* 426 U.S. at 388–89, 96 S.Ct. at 2111, and it is not clear concerning its application to tribal business corporations.

Ambiguities must be resolved in favor of the tribe, and the failure of Public Law 280 to address the status of tribal business corporations must be narrowly construed. *Bryan,* 426 U.S. at 380, 96 S.Ct. at 2107 ("omission has significance in the application of the canons of construction applicable to statutes affecting Indian immunities"); *Atkinson,* 569 P.2d at 166. Furthermore, because the Indian Reorganization Act's model articles of incorporation anticipated that a tribal corporation would be subject to suit by including a "sue and be sued" clause, this implies that sovereign immunity applies in the absence of such a clause. Here, there is no "sue and be sued" clause.

In sum, appellant's contentions on appeal find support only in an Arizona State Court decision, and to a lesser extent in New Mexico. And Congress has left the issue unresolved. The Indian Reorganization Act was intended to provide a waiver of sovereign immunity to tribal business corporations, but only when accomplished by articles of incorporation. And Public Law 280 has unclear ramifications for tribal business corporations. Our declaration that a tribal business corpo-

ration has no sovereign immunity for off-reservation activities is unwarranted in the absence of direction from Congress, the Supreme Court of the United States, or the Minnesota Supreme Court.

Although appellant argues persuasively that a tribal business corporation conducting business off the reservation should be held legally accountable for its actions, because our supreme court has not spoken, and "[b]ecause of the supremacy of federal law, we are bound to recognize the doctrine of tribal sovereign immunity, even if we were to find valid public policy reasons to hold it inapplicable in this case." *Atkinson,* 569 P.2d at 163.

### 3. *Sovereign immunity must be expressly waived*

Because Little Six is entitled to immunity on the claims stated in this case, we must next determine if Little Six waived that immunity. Tribes, like Congress, may waive sovereign immunity to advance economic interests that may be thwarted if third parties perceive the tribes to be legally unaccountable for their business transactions. *United States v. Oregon,* 657 F.2d 1009, 1013–14 (9th Cir.1981). Such a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677 (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). Consent may not be inferred, *see Maynard v. Narragansett Indian Tribe,* 984 F.2d 14, 16 (1st Cir.1993), even if similar acts would constitute an implied waiver by a non-Indian government. *American Indian Agric. Credit Consortium v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1377 (8th Cir. 1985). "Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe." *Puyallup Tribe,* 433 U.S. at 172, 97 S.Ct. at 2621.

Minnesota courts find a waiver of immunity for Indian tribal businesses where

---

**2.** We note that "there is notably absent [from P.L. 280] any conferral of state jurisdiction over the tribes themselves." *Bryan,* 426 U.S. at 389, 96 S.Ct. at 2111; *see Atkinson,* 569 P.2d at 167

(clear expression of waiver of sovereign immunity absent from P.L. 280). Furthermore, P.L. 280 does not apply to the Red Lake Reservation. 28 U.S.C. § 1360(a).

there exists express language such as that contained in a "sue and be sued" clause. *Duluth Lumber*, 281 N.W.2d at 384; *Dacotah Prop. v. Prairie Island Indian Community*, 520 N.W.2d 167, 171 (Minn.App.1994), *pet. for rev. granted*, (Minn. Sept. 28, 1994), *appeal dismissed* (Minn. Feb. 7, 1995). But, no such clause is present in Little Six's articles of incorporation, nor in the Shakopee Mdewakanton Sioux Community ordinances. Rather, the articles of incorporation clearly state that Little Six must consent to be sued by contract or by another commercial document which specifies the terms and conditions of the consent. Here, no such express consent to suit exists.

Appellant argues that by registering as a foreign corporation and consenting to service of process, Little Six has waived immunity. But consent to service does not amount to a waiver of sovereign immunity. The Ninth Federal Circuit heard and rejected this argument in *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1322 (9th Cir.1983), *cert den.*, 467 U.S. 1214, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984). There, the court held that consent to service of process does not waive sovereign immunity because it would amount to a waiver of tribal immunity by individual tribal officers who agree to accept service of process, which is not possible in the law. *Id.* (quoting *United States v. United States Fidelity Co.*, 309 U.S. 506, 513, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940)). Other courts, too, have held that incorporating under the laws of a state does not amount to an express waiver of sovereign immunity. *Haile v. Saunooke*, 246 F.2d 293, 297–98 (4th Cir.1957), *cert denied*, 355 U.S. 893, 78 S.Ct. 268, 2 L.Ed.2d 191 (1957). And a settlement agreement subjecting land to the laws and jurisdiction of the state does not result in an inferential waiver of sovereign immunity. *Maynard*, 984 F.2d at 16.

4. *Equal Protection under the Indian Civil Rights Act*

■ Appellant argues in passing that she is denied equal protection under the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(8) because Little Six allows suit against it by the tribe and tribal members but not others.

"As separate sovereigns preexisting the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Santa Clara Pueblo*, 436 U.S. at 56, 98 S.Ct. at 1675–76. Congress passed the 1968 law to impose certain restrictions on the tribes and provide protection similar to the Bill of Rights and Fourteenth Amendment. *Id.* at 57, 98 S.Ct. at 1676. But Congress has never authorized civil actions to be brought in state or federal courts for relief under the 1968 Act by waiving the tribe's sovereign immunity. *Id.* at 59, 98 S.Ct. at 1677. Instead, the 1968 law only provides for habeas corpus relief to test the validity of tribal action. *Id.* at 58, 98 S.Ct. at 1677. Appellant must seek relief under the Act in the tribal court. *Id.* at 65, 98 S.Ct. at 1680–81; *Snow*, 709 F.2d at 1323.

### DECISION

The decision of the trial court to grant summary judgment in favor of respondent Little Six, Inc. is compelled under the existing state of the law on sovereign immunity. Little Six has not expressly waived its sovereign immunity.

**Affirmed.**